Filed 2/18/26  P. v. Martin CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ALBERT MARTIN,<br><br>　　　　Defendant and Appellant. | E086233<br><br>(Super.Ct.No. RIF135704)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed.

Robert Albert Martin, in pro. per.; and Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Robert Albert Martin appeals from the trial court's postjudgment order denying his petition for resentencing of his second degree murder conviction (Pen. Code,[1] § 187, subd. (a)) under section 1172.6 (formerly section 1170.95).[2] Appointed counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so. After considering the arguments raised in defendant's supplemental brief and exercising our discretion to conduct an independent review of the record, we affirm the trial court's postjudgment order denying defendant's section 1172.6 petition. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 231-232.)

---

[1] All future statutory references are to the Penal Code.

[2] This is defendant's second appeal from the denial of his petition for resentencing of his murder conviction. This court had previously affirmed the denial, finding "because the prior opinion from defendant's direct appeal shows he was convicted of murder as an actual killer, defendant is not entitled to relief under section 1170.95 [now section 1172.6] as a matter of law." (*People v. Martin* (Oct. 21, 2013, E074388) [nonpub.opn.] (*Martin II*).)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *Prosecution's Evidence*

On March 25, 2007, defendant and his friends went to a restaurant in Corona. Also present was the victim, Joel Wright, along with his family and friends. One of defendant's friends recognized Wright and indicated that Wright had previously "jumped" their "slow friend." Defendant, who was drinking with his friend, became "bothered" after hearing about Wright "jumping" his friend, and he began staring and "maddogging" Wright and staring at the people he was with. Wright stood up and said, " 'What are you looking at' " and shouted " 'Norco.' " Defendant walked over to Wright's table and "chaos" erupted. (*Martin I*, *supra*, E055372.)

Defendant swung what appeared to be three or four fist blows toward Wright's chest and abdominal area. One of the blows caused Wright to "just stop[ ]," as if "the wind got knocked out of him." While being removed from the restaurant, defendant removed his shirt, threw gang signs and shouted " 'Now what. Now what.' " Defendant got in a car, yelling " 'Crown Town' " and " 'CVLS.' " One witness identified a shirtless man who, while running in the parking lot, tripped and fell. When the man fell, he

---

[3] We provide factual context from this court's unpublished prior appellate opinion from defendant's direct appeal, case No. E055372, affirming defendant's conviction and sentence. (*People v. Martin* (Oct. 21, 2013, E055372) [nonpub. opn.], (*Martin I*).) "These facts are 'for background purposes and to provide context for the parties' arguments.' [Citation.] We do not rely on these facts to review the trial court's determination for [defendant's] prima facie showing." (*People v. Rushing* (2025) 109 Cal.App.5th 1025, 1028, fn. 2.)

dropped a silver object that sounded like metal when it hit the ground. The police found a knife blade with blood on it in the parking lot. (*Martin I*, *supra*, E055372.)

Once inside the fleeing car, defendant began hitting the dashboard, laughing and screaming that he "stabbed that guy." Defendant exclaimed, " 'I got him, I killed him. I knocked him out.' " During the drive, defendant was "[s]creaming, laughing hysterically," repeating, " 'I got him. Knocked him out. I killed him. I fucked him up.' " When defendant arrived at the home of one of his friends, he ran through the house, after which a bladeless knife handle was found on the floor. (*Martin I*, *supra*, E055372.)

Wright died from stab wounds to his chest. (*Martin I*, *supra*, E055372.)

Detective Daniel Dunnigan of the Corona Police Department processed the crime scene. He saw the knife blade in the parking lot and the blood-stained, multi-tool corkscrew (corkscrew). Forensic technician Ralph Morales collected the items. After photographing them as found, Morales separately collected, packaged, and transported them back to the Corona Police Department where he locked them in a secure storage locker located in the laboratory. Sergeant Henderson collected the knife handle from the home, put it into an evidence envelope, and gave it to Officer Robert Montanez. (*Martin I*, *supra*, E055372.)

On April 12, 2007, Daniel Verdugo, a forensic technician with the Corona Police Department, transported the knife blade, knife handle, corkscrew, and a sample of Wright's blood from the Corona Police Department property and evidence room to the local office of the California Department of Justice (DOJ) laboratory for forensic testing

4

and analysis. DOJ analyst David Wu determined that the knife blade, knife handle, and corkscrew all tested positive for blood. Wu swabbed the items and sent the swabs up to the Richmond office of the DOJ for DNA analysis. DOJ senior criminalist, Jonathan Schell, testified that Wright's DNA was found on the corkscrew and knife blade, and defendant's DNA was found on the knife blade and knife handle. Verdugo testified that the knife handle matched the knife blade found in the parking lot of the restaurant. (*Martin I*, *supra*, E055372.)

Defendant admitted that his chest tattoo, "CT," stood for "Crown Town" and Corona. He said that "Crown Town" represents the neighborhood where he grew up in Corona and the people he associated with. He "earned" this tattoo by "put[ting] in some work around the neighborhood." Defendant said he "jumped into" the gang when he was 12, and he "need[ed] to be respected." (*Martin I*, *supra*, E055372.)

B. *The Defense*

Forensic pathologist Frank Sheridan opined the knife blade found in the parking lot could not have physically caused Wright's fatal wound because the blade was not long enough. Dr. Sheridan agreed, however, that Wright had been stabbed to death. Defense gang expert Randal Hecht opined that defendant was not a "CVL" gang member because CVL is a Hispanic gang and gangs are race segregated. (*Martin I*, *supra*, E055372.)

Regina Meyer, property administrator for the Corona Police Department, testified that in general, once evidence is submitted to her, the chain of custody begins. She stated that chain of custody begins when an item is logged into the police property computer. In

5

the instant case, Morales did not enter the seized items of evidence into the computer until April 4, 2007. Meyer testified that if anyone wished to know where that evidence was between March 25 and April 4, 2007, he or she would have to ask Morales. Meyer testified that police department personnel who collect evidence should computer log that evidence into property records, "as soon as possible." (*Martin I*, *supra*, E055372.)

### C. Procedural Background

Defendant was charged with second degree murder (§ 187, subd. (a)) and convicted of murdering Wright by stabbing him with a two and three-quarter-inch pocketknife during a fight. (*Martin I*, *supra*, E055372.) The jury also convicted defendant of active participation in a criminal street gang (§ 186.22, subd. (a)). The jury further found true the allegations that defendant committed the murder to benefit his gang, within the meaning of section 186.22, subdivision (b), and that he personally used a deadly and dangerous weapon, within the meaning of former section 12022, subdivision (b)(1), and section 1192.7, subdivision (c)(23). He was sentenced to 15 years to life, plus a consecutive one year in state prison. (*Martin I*, *supra*, E055372.)

Defendant subsequently appealed, and this court affirmed the judgment and sentence with directions to the trial court to correct defendant's presentence custody credits in a nonpublished opinion filed on October 21, 2013. (*Martin I*, *supra*, E055372.)

On August 28, 2019, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95 (now section 1172.6). The trial court denied the petition on December 13, 2019. (*Martin II*, *supra*, E074388.)

6

On February 10, 2025, defendant filed another form petition for resentencing pursuant to section 1172.6.[4] He checked the boxes asserting that he had been convicted of murder under a now-invalid theory and that he could not now be convicted of murder under the amended homicide laws. He asked for appointment of counsel.

After counsel was appointed, on May 29, 2025, the People filed a request for judicial notice of documents in the case for purposes of showing defendant was not eligible for relief. In support, the People attached the jury instructions that were given to defendant's jury and this court's unpublished opinion from his direct appeal in case No. E055372. The attached jury instructions show that no instructions were given on aiding and abetting, natural and probable consequences, first or second degree felony murder, provocative act, or any other theory that is now definitely or potentially invalid. Defendant filed no responsive pleading.

On May 30, 2025, the trial court held a prima facie hearing on the petition. Defendant was not present. The prosecutor argued that no potentially invalid jury instructions had been given to the jury. Defense counsel agreed and submitted the matter. The trial court summarily denied the petition.

Defendant timely appealed.

---

[4] The record also contains filings and orders related to defendant's request for relief under section 1172.1 due to changes in the law governing proof of gang allegations. Defendant's appellate counsel was informed that this issue is still pending in the trial court.

III.

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Delgadillo*, *supra*, 14 Cal.5th 216, setting forth a statement of the case, the factual background and a summary of the procedural background. (See *People v. Wende* (1979) 25 Cal.3d 436; *Anders v. California* (1967) 386 U.S. 738.) Counsel considered potential issues on appeal but found no specific arguments as grounds for relief, and requests that we exercise our discretion and independently examine the appellate record for any arguable issues.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. Defendant does not present any arguments relating to the denial of his section 1172.6 petition. Rather, in his 73-page brief, defendant incorporates law and legislation relating to youth offender parole hearing under sections 3051 and 4801, habeas corpus jurisdiction, postconviction proceedings under section 1203.01, Assembly Bill No. 333 relating to gang enhancements, and the motion for new trial that was presented by his former trial counsel following his convictions. He also seeks to draw attention to a case where the Corona Police Department was found guilty of malicious prosecution and argues those same officers used the same tactics in his case. He further argues that the knife was too small to reach the victim's heart and the officers did a "shoddy" job in investigating his case. Defendant essentially seeks to relitigate his trial.

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(2017–

2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 . . . , Senate Bill [No.] 1437 added [former] section 1170.95, [now section 1172.6,] which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) In *Lewis*, our Supreme Court held, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)

Under *Delgadillo*, if a no-issues brief is filed in a section 1172.6 appeal and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.) We are not required to conduct "an independent review of the entire record to identify unraised issues" but may do so at our discretion. (*Ibid*. ["While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."])

Defendant's claims related to his trial, malicious prosecution, the murder weapon,

and the officers' investigation of the case are not cognizable in section 1172.6 proceedings. Courts have consistently found that section 1172.6 is not a vehicle to relitigate errors or issues already decided. (See, e.g., *People v. Coley* (2022) 77 Cal.App.5th 539, 549 [§ 1172.6 "is not a means by which a defendant can relitigate issues already decided"]; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 ["mere filing" of § 1172.6 petition does not afford petitioner new opportunity to raise errors related to a plea]; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [§ 1172.6 is not a direct appeal].) Resentencing proceedings under the statute involve "prospective relief from a murder conviction that was presumptively valid at the time," not the correction of errors related to a plea. (*People v. Strong* (2022) 13 Cal.5th 698, 713, 714.)

The record on appeal here shows that jury was not instructed on aiding and abetting, natural and probable consequences, first or second degree felony murder, provocative act, imputed malice, or any other theory that is invalid. Defendant never argued at his trial that his conviction was based on anything other than actual-killer culpability, and no facts suggest he might have been convicted as an aider and abettor. The defense's theory at trial was who was the lone killer—defendant or someone else, and whether the knife could have caused the fatal wound. (See *Martin I*, *supra*, E055372.) There was no suggestion that defendant had been working together with another member of his party or that defendant aided and abetted anyone else. Thus, the dispute at trial was the identity of the lone killer and whether the knife was capable of inflicting the fatal stab wound. The jury resolved that issue against defendant. The trial

court thus properly denied defendant's resentencing petition for failure to show he was not the actual perpetrator. Defendant does not dispute that a lone person stabbed the victim but instead seeks to relitigate his trial. As noted above, defendant's claims related to his trial are not cognizable in section 1172.6 proceedings.

It is well settled that section 1172.6 precludes relief as a matter of law where the record of conviction shows a defendant was the sole perpetrator. In *Delgadillo*, for example, our Supreme Court determined that the defendant was "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing." (*Delgadillo*, *supra*, 14 Cal.5th at p. 233; see *People v. Garcia* (2022) 82 Cal.App.5th 956, 969 [affirming denial of resentencing because the record of conviction "unequivocally establishes" the defendant was the sole perpetrator and the actual killer]; *People v. Harden* (2022) 81 Cal.App.5th 45, 47-48 [petition for resentencing may be summarily denied when, without factfinding, weighing conflicting evidence, or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury determined the defendant was the actual killer].) Here, we have reviewed defendant's record of conviction and find that defendant was the actual perpetrator and thus not entitled to section 1172.6 relief. (§ 1172.6; *Delgadillo*, *supra*, 14 Cal.5th at p. 233.)

## IV.

## DISPOSITION

The trial court's postjudgment order denying defendant's second section 1172.6 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
      Acting P. J.


MILLER
      J.

12